UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH EARL LOURIS, #407394,

Petitioner,

v.                                          CASE NO. 2:19-CV-11017
                                            HON. GEORGE CARAM STEEH

MATTHEW MACAULEY,

Respondent.

_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I.    Introduction

Michigan prisoner Kenneth Earl Louris ("petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  The petitioner was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and three counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Oakland County Circuit Court

-1-

and was sentenced, as a fourth habitual offender, Mich. Comp. Laws §
769.12, to life imprisonment without the possibility of parole on the murder
conviction, a concurrent term of 40 to 60 years imprisonment on the armed
robbery conviction, a concurrent term of 6 to 30 years on the felon in
possession conviction, and concurrent terms of 2 years imprisonment on
the felony firearm convictions to be served consecutively to the other
sentences.

In his pleadings, the petitioner raises claims concerning the jury
instructions and his right to present a defense, the sufficiency of the
evidence, and the great weight of the evidence.  For the reasons stated
herein, the Court denies the habeas petition.  The Court also denies a
certificate of appealability and denies leave to proceed in forma pauperis
on appeal.

## II.    Facts and Procedural History

The petitioner's convictions arise from the shooting death of a man
during an armed robbery at a home in Pontiac, Michigan in 2015.  The
Michigan Court of Appeals described the underlying facts, which are
presumed correct on habeas review, see 28 U.S.C. § 2254(e)(1); Wagner
v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

This appeal arises from the conviction and sentences of defendant arising from the death of William McGee (victim) in December, 2015. On the evening of December 3, 2015, the victim and his friend Jordan Worrall went to the home of Lajazim Alexander in the City of Pontiac. They were joined there by others,[2] including a cousin of the victim, Daijon Grandberry, and the victim's brother, Kavonte Manley. Witnesses testified that the men gathered in the basement of the home to gamble, primarily on dice. Of particular importance to this appeal was the conflicting testimony as to whether Worrall was gambling. Grandberry testified that Worrall was shooting dice and gambling whereas Worrall testified that although he had $50, he did not gamble.

Witness testimony revealed that sometime between 11:30 and midnight, defendant came to Alexander's home and went into the basement. Though the exact time frame was not discernable, shortly after defendant arrived, he stuck what Worrall described as a long-barreled revolver to Worrall's ribs and demanded Worrall's money. According to Worrall, the victim told defendant, to "Leave 'J' alone, Ken."[3] Worrall testified that defendant then told the victim to "Shut the f*** up." Then, defendant struck Worrall on the top of his head with the gun, knocking Worrall unconscious. Worrall does not recall a shot being fired, but according to Grandberry, as soon as defendant hit Worrall with the gun, the gun fired a single shot hitting the victim in the head. Manley could not specifically recall how much time passed between defendant hitting Worrall with the gun and the gun being fired, but he approximated it was 15 to 20 seconds.

After hearing shots, Alexander went to see what was happening in her basement when she heard Manley screaming

---

[2]Witness testimony varied as to the exact number of persons present in the basement of Alexander's home on the evening at issue in this case.

[3]Worrall testified that his nickname was "J."

"...he shot my brother." She looked into the basement and saw defendant with a revolver in his hand and heard him state: "Quit playing with me, n***s. Where the f*** my money at?" She then screamed at defendant to get out of her house which he did, but not before most of the people in the basement had fled. A number of guests then telephoned police who arrived at Alexander's house. The victim was still alive, though he was lying in a large pool of blood having been shot in the head, and Worrall needed over twenty stitches in his head to close up the wound he had suffered as a result of the blow to his head. The victim died approximately five days later from the gunshot wound to the head.

After the close of proofs, defense counsel requested that the trial court instruct the jury on accident, M. Crim. JI 7.3a and involuntary manslaughter, M. Crim. JI 7.3. The trial court refused both instructions stating that neither instruction was supported by the evidence. Defendant was thereafter convicted and sentenced as stated above.

People v. Louris, No. 333123, 2017 WL 4700026, *1-2 (Mich. Ct. App. Oct. 19, 2017) (unpublished, per curiam) (footnotes in original).

Following his convictions and sentencing, the petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review.  The court denied relief on those claims and affirmed his convictions and sentences.  Id. at *2-8.  The petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  People v. Louris, 501 Mich. 1040, 908 N.W.2d 909 (2018).

-4-

The petitioner thereafter filed his federal habeas petition.  He raises

the following claims:

> I.  He was denied his constitutional rights to a fair trial, to present a defense, and to a properly instructed jury under the Sixth and Fourteenth Amendments.
>
> II.  His murder conviction must be reversed where the prosecution's evidence was insufficient to prove beyond a reasonable doubt that he acted with malice.
>
> III.  Where the weight of the evidence so preponderates against the verdict of guilty of armed robbery, and for any larceny supporting the felony murder charge, and is so contradictory, it violates his rights.

The respondent has filed an answer to the petition contending that it

should be denied.

## III.   Standard of Review

Federal law imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it
'applies a rule that contradicts the governing law set forth in [Supreme
Court cases]' or if it 'confronts a set of facts that are materially
indistinguishable from a decision of [the Supreme] Court and nevertheless
arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540
U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S.
362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a
federal habeas court to 'grant the writ if the state court identifies the correct
governing legal principle from [the Supreme] Court but unreasonably
applies that principle to the facts of petitioner's case." Wiggins v. Smith,
539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also
Bell, 535 U.S. at 694.  However, "[i]n order for a federal court find a state
court's application of [Supreme Court] precedent 'unreasonable,' the state
court's decision must have been more than incorrect or erroneous.  The
state court's application must have been 'objectively unreasonable.'"

Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7; Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection

of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.; see also White v. Woodall, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam)); Lockyer, 538 U.S. at 71-72. Section 2254(d) "does not require a

state court to give reasons before its decision can be deemed to have

been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100.

Furthermore, it "does not require citation of [Supreme Court]

cases–indeed, it does not even require awareness of [Supreme Court]

cases, so long as neither the reasoning nor the result of the state-court

decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002); see also

Mitchell, 540 U.S. at 16.

The requirements of clearly established law are to be determined

solely by Supreme Court precedent.  Thus, "circuit precedent does not

constitute 'clearly established Federal law as determined by the Supreme

Court'" and it cannot provide the basis for federal habeas relief.  Parker v.

Matthews, 567 U.S. 37, 48-49 (2012) (per curiam); see also Lopez v.

Smith, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal

courts, however, may be useful in assessing the reasonableness of the

state court's resolution of an issue.  Stewart v. Erwin, 503 F.3d 488, 493

(6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir.

2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on

federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A petitioner may

rebut this presumption with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Lastly, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Jury Instruction and Right to Present a Defense Claims

The petitioner first asserts that he is entitled to habeas relief because the trial court refused to instruct the jury on involuntary manslaughter and accident.  The respondent contends that these claims are procedurally defaulted in part and that they lack merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned.  Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  Estelle v. McGuire, 502 U.S. 62, 72 (1991); Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury applied the instruction improperly.  Binder v. Stegall, 198 F.3d 177, 179 (6th Cir. 1999).  A jury

instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Jones v. United States, 527 U.S. 373, 391 (1999); Grant v. Rivers, 920 F. Supp. 769, 784 (E.D. Mich. 1996).  The failure to give an instruction that is supported by the evidence does not automatically justify habeas relief – the failure to instruct must have rendered the trial fundamentally unfair.  Cupp v. Naughten, 414 U.S. 141, 147 (1973); Daniels v. Lafler, 501 F.3d 735, 741 (6th Cir. 2007). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson, 431 U.S. at 155.  State law instructional errors rarely form the basis for federal habeas relief.  Estelle, 502 U.S. at 71-72; Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012).

The Michigan Court of Appeals considered these claims on direct appeal (in part on plain error review) and denied relief.  The court explained:

> "When this Court reviews jury instructions for reversible error, we consider the instructions as a whole." People v. Richardson, 490 Mich. 115; 803 N.W.2d 302 (2011), citing People v. Kelly, 423 Mich. 261, 270–272; 378 N.W.2d 365 (1985). "'A criminal defendant is entitled to have a properly instructed jury consider the evidence against him.'" People v. Armstrong, 305 Mich. App. 230, 239; 851 N.W.2d 856 (2014), quoting People v. Riddle, 467 Mich. 116, 124; 649 N.W.2d 30 (2002). "The jury

-11-

instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." Armstrong, 305 Mich. App. at 240 (citation and quotation marks omitted).

"The trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." Id., citing MCL 768.29, and Riddle, 467 Mich. at 124. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." People v. Cornell, 466 Mich. 335, 357; 646 N.W.2d 127 (2002). "Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." People v. Bartlett, 231 Mich. App. 139, 143–144; 585 N.W.2d 341 (1998) (citations omitted).

### 1. INVOLUNTARY MANSLAUGHTER

Defendant argues that the trial court erred when it refused to instruct the jury on involuntary manslaughter. "Manslaughter is a necessarily included lesser offense of murder" and if "a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." People v. Gillis, 474 Mich. 105, 137; 712 N.W.2d 419 (2006) (citations omitted). See also People v. Mendoza, 468 Mich. 527, 541; 664 N.W.2d 685 (2003). "Involuntary manslaughter is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." Mendoza, 468 Mich. at 536. "Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse." People v. Datema,

448 Mich. 585, 594–595; 533 N.W.2d 272 (1995) (citation and quotation marks omitted).

"'[T]he sole element distinguishing manslaughter and murder is malice[.]'" Gillis, 474 Mich. at 138, quoting People v. Holtschlag, 471 Mich. 1, 21–22; 684 N.W.2d 730 (2004). "'Malice' is defined as an act done 'with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.'" Gillis, 474 Mich. at 138, quoting Mendoza, 468 Mich. at 536. A defendant is "entitled to an involuntary manslaughter instruction only if a rational view of the evidence would have supported a finding" that a victim's death was "caused by an act of 'gross negligence or an intent to injure, and not malice ....'" Gillis, 474 Mich. at 138, quoting Holtschlag, 471 Mich. at 21–22.

On appeal, defendant advances the theory as he did in the trial court that there was no evidence that defendant intended to harm the victim because there was no evidence that the firearm was intentionally fired. As such, defendant argues, the jury should have received an instruction on involuntary manslaughter because there was no evidence in the record that defendant intended to harm the victim. In support of his argument, defendant primarily relies on the testimony of Grandberry who stated that the gun striking of Worrall was simultaneous with the firing of the fatal shot. Therefore, the only reasonable explanation defendant argues, is that the shooting was an accident. However, there was no evidence presented that could have led to a conclusion that defendant did not act with malice. Worrall testified, as did others, that defendant put a gun to his ribs and demanded his money. Even if we were to find that the witness testimony to robbery should not have been considered, we are still left with the unrefuted evidence that defendant took his gun and struck Worrall on the head, causing a deep gash and a loss of consciousness. Defendant did not argue at trial, nor can he on appeal that this act was done without malice. Accordingly, even if we were to disregard the

testimony of everyone but Grandberry, we still cannot conclude that there was any evidence that would support a finding of involuntary manslaughter. The axiom: "If the homicide was committed with malice, it is murder," Holtschlag, 471 Mich. at 21, guides our decision. At the time that the shot was fired defendant was using his loaded weapon to intentionally strike Worrall, suggesting that at a minimum, defendant acted with a willful and wonton disregard of the likelihood that his actions would cause death or great bodily harm. Malice having been defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm," People v. Goecke, 457 Mich. 442, 464; 579 N.W.2d 868 (1998), the record makes clear that defendant, in striking Worrall with a loaded weapon committed "a malum in se unlawful act" at the time that the fatal shot was fired from his weapon. Holtschlag, 471 Mich. at 22. As a consequence, defendant was not entitled to a jury instruction on involuntary manslaughter. People v. Mills, 450 Mich. 61, 81; 537 N.W.2d 909, mod 450 Mich. 1212; 539 N.W.2d 504 (1995) holding that a trial court is not required to give a requested instruction "where the theory is not supported by the evidence." Id.

## 2. ACCIDENT

Relatedly, defendant contends that the trial court erred when it refused to instruct the jury with M. Crim. JI 7.3a, which is titled "Accident as Defense to Specific Intent Crime." M. Crim. JI 7.3a provides,

> The defendant says that [he/she] is not guilty of [state crime ] because [he/she] did not intend to [state specific intent required]. The defendant says that [his/her] conduct was accidental. If the defendant did not intend to [state specific intent required], [he/she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the

-14-

defendant intended to [state specific intent required].

Additionally, defendant contends on appeal that the trial court should have sua sponte instructed the jury with M. Crim. JI 7.2, which is titled "Murder: Defense of Accident (Not Knowing Consequences of Act)." M. Crim. JI 7.2 provides,

> (1) The defendant says that [he/she] is not guilty of _____ because ____'s death was accidental. By this defendant means that [he/she] did not mean to kill or did not realize that what [he/she] did would probably cause a death or cause great bodily harm.
>
> (2) If the defendant did not mean to kill, or did not realize that what [he/she] did would probably cause a death or cause great bodily harm, then [he/she] is not guilty of murder.

Defendant argued at trial, as he does on appeal, that in the absence of evidence as to the intent behind his actions, the shooting was an accident. It was therefore error, defendant argues, for the trial court to have not so instructed the jury.

In People v. Hess, 214 Mich. App. 33, 37; 543 N.W.2d 332, (1995), this Court defined accident as:

> a fortuitous circumstance, event or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking

place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence. (internal citations omitted).

For the trial court to have instructed the jury on accident as requested by defendant, there must have been evidence that the defendant acted without an intent to kill or to cause great bodily harm or that he acted without a willful and wanton disregard for the likelihood of the natural tenancy of his behavior to cause death or great bodily harm. Goecke, 457 Mich. at 466. Initially we note that to the extent defendant argues that an instruction on accident should have been given by the trial court because it was argued by trial counsel, the arguments of counsel do not constitute evidence, and therefore could not be considered when determining whether there exists factual support for the instruction. See Mills, 450 Mich. at 82, n 15. In order for us to find that an instruction on accident was warranted by the evidence, defendant again directs us to the testimony of Grandberry. Defendant argued at trial as he does on appeal that based on the testimony of Grandberry, when defendant struck Worrall with the loaded pistol, the gun must have "accidentally" fired striking and eventually killing the victim. However, Grandberry's testimony does not demonstrate a lack of malice, as stated above, it supports a contrary finding. Again, even if we were to only consider the evidence put forth by Grandberry, that evidence demonstrated that defendant acted, at a minimum, with a willful and wanton disregard of the likelihood that his actions would cause death or great bodily harm. Goecke, 457 Mich. at 464. Even if we agree with defendant that the act of striking Worrall's head caused the gun to fire, such conduct is the negation of accident, it is, rather, the definition of malice in that the conduct was, at a minimum, a

-16-

willful and wanton disregard of the likelihood that the natural
tendency of defendant's behavior was likely to cause death or
great bodily injury. Accordingly, defendant was not entitled to a
jury instruction on accident.

Moreover, defendant has failed to demonstrate how the failure
to instruct the jury on accident or involuntary manslaughter
undermined the reliability of the jury's verdict. The trial court
instructed the jury that to convict defendant of felony murder
that defendant had to have "one of these three states of mind:
He intended to kill, or he intended to do great bodily harm to
[the victim], or he knowingly created a very high risk of death or
great bodily harm knowing that death or such harm would be
the likely result of his actions." Thus, any finding that the
victim's death was accidental would have been inconsistent
with the jury's conviction of defendant for felony murder. See
People v. Hawthorne, 474 Mich. 174, 185; 713 N.W.2d 724
(2006) (holding that the defendant failed to demonstrate that
the trial court's failure to instruct on the accident defense
undermined the reliability of the verdict because the jury
instructions on the intent element of murder were clear that a
finding of accident would be inconsistent with a finding that the
defendant possessed the intent requirement for murder).

Louris, 2017 WL 4700026 at *2-5.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.

First, to the extent that the petitioner asserts that the trial court erred in

instructing the jury under Michigan law, he merely alleges a violation of

state law which does not justify federal habeas relief.  See, e.g., Rashad v.

Lafler, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation of

-17-

the propriety of a jury instruction under state law does not entitle a habeas claimant to relief").  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Oviedo v. Jago</u>, 809 F.2d 326, 328 (6th Cir. 1987);  <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005)  ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"); <u>Sanford v. Yukins</u>, 288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does not lie for perceived errors of state law.  <u>Estelle</u>, 502 U.S. at 67-68.

Second, the petitioner fails to establish that the trial court's refusal to instruct the jury on involuntary manslaughter and accident rendered his trial fundamentally unfair.  As to involuntary manslaughter, the petitioner fails to state a cognizable claim for habeas relief.  The Supreme Court has declined to determine whether due process requires jury instructions on lesser included offenses in non-capital cases.  <u>Beck v. Alabama</u>, 447 U.S. 625, 638 n. 14 (1980).  In <u>Hopper v. Evans</u>, 456 U.S. 605, 611 (1982), the Supreme Court ruled that a capital defendant is entitled to a lesser included offense instruction only when there is evidence to support it.  The Supreme Court has since held that state courts are not constitutionally

-18-

required to instruct capital case juries on crimes which are not lesser included offenses of the charged crime. Hopkins v. Reeves, 524 U.S. 88, 90-91 (1998). The Sixth Circuit has interpreted Beck to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." Campbell v. Coyle, 260 F.3d 531, 541 (6th Cir.2001) (citing Bagby v. Sowders, 894 F.2d 792, 795-97 (6th Cir.1990) (en banc)); see also Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002); Adams v. Smith, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). The Sixth Circuit has confirmed that first-degree murder is a non-capital offense in Michigan. Scott, 302 F.3d at 606; see also Tegeler v. Renico, 253 F. App'x 521, 524-25 (6th Cir. 2007) (due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner received a non-parolable life sentence). Consequently, an involuntary manslaughter instruction was not constitutionally required. The petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

The Sixth Circuit has further stated that:

...such a claim warrants habeas relief, if at all, only in the rare instance that 'a fundamental miscarriage of justice is found to have resulted from the arbitrary and unsupportable denial of a lesser included offense instruction in clear defiance of state

law.'" <u>Bagby</u>, 894 F.2d at 795 (suggesting that habeas relief would be warranted only if the failure to give the requested instruction was "likely to have resulted in the conviction of an innocent person").

<u>Richardson v. Campbell</u>, No. 21-3421, 2021 WL 6773144, *2 (6th Cir. Nov. 2, 2021), cert. den., _ U.S. _, 142 S. Ct. 1389 (2022).  The petitioner makes no such showing.

And even if the petitioner states a cognizable claim, he fails to show that the trial court's refusal to give an involuntary manslaughter instruction rendered his trial fundamentally unfair.  As explained by the Michigan Court of Appeals, such an instruction was not warranted based upon the evidence at trial which showed that the petitioner used a loaded gun to strike Worrall during the commission of a larceny.  Such action was sufficient to establish that he acted with malice, i.e., the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  Habeas relief is not warranted on this claim.

As to accident, the petitioner similarly fails to state a cognizable habeas claim.  The Supreme Court has not clearly established a constitutional right to have a jury instructed on a defense theory at a

criminal trial. While a defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor" as a matter of federal criminal procedure, Mathews v. United States, 485 U.S. 58, 63 (1988), such a right is not constitutionally guaranteed. Consequently, the Michigan Court of Appeals' ruling cannot be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. See Lopez v. Smith, U.S., 135 S. Ct. 1, 4 (2014); Carey v. Musladin, 549 U.S. 70, 77 (2006); Phillips v. Million, 374 F.3d 395, 397-398 (6th Cir. 2004).

Nonetheless, assuming that a criminal defendant has a constitutional right to an instruction on a defense theory supported by sufficient evidence, the petitioner cannot prevail on this claim. As explained by the Michigan Court of Appeals, the evidence at trial did not support an accident instruction due to the petitioner's use of a loaded gun to strike Worrall during the commission of a larceny. Again, such action was sufficient to establish that he acted with malice, i.e., the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. The trial court's refusal to instruct the jury on

accident was thus supported by state law and did not render the trial
fundamentally unfair.  Habeas relief is not warranted on this claim.

The petitioner relatedly asserts that the lack of the foregoing
instructions violated his right to present a defense.  The respondent
contends that this claim is procedurally defaulted and that it lacks merit.

The right of an accused to present a defense has long been
recognized as "a fundamental element of due process."  Washington v.
Texas, 388 U.S. 14, 19 (1967); see also Holmes v. South Carolina, 547
U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt
based solely on strength of prosecution's case violated defendant's right to
present a defense); Chambers v. Mississippi, 410 U.S. 284, 302 (1973)
(exclusion of hearsay statements critical to defense which "bore persuasive
assurances of trustworthiness," coupled with refusal to permit
cross-examination of the declarant, violated defendant's right to due
process).

A defendant's right to present evidence is not unlimited, however,
and may be subject to "reasonable restrictions."  United States v. Scheffer,
523 U.S. 303, 308 (1998).  A defendant "does not have an unfettered right
to offer evidence that is incompetent, privileged, or otherwise inadmissable

-22-

under standard rules of evidence." <u>Montana v. Egelhoff</u>, 518 U.S. 37, 42

(1996) (quoting <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988)); <u>see also</u>

<u>Holmes</u>, 547 U.S. at 326 (recognizing that "well-established rules of

evidence permit trial judges to exclude evidence if its probative value is

outweighed by certain other factors such as unfair prejudice, confusion of

the issues, or potential to mislead the jury").  When deciding if the

exclusion of evidence impairs a defendant's rights, the question is not

whether the excluded evidence would have caused the jury to reach a

different result.  The question is whether the defendant was afforded "a

meaningful opportunity to present a complete defense." <u>Crane v.</u>

<u>Kentucky</u>, 476 U.S. 683, 690 (1986) (quoting <u>California v. Trombetta</u>, 467

U.S. 479, 485 (1984)); <u>see also</u> <u>Chambers</u>, 410 U.S. at 302.

The Michigan Court of Appeals considered this claim on plain error

review on direct appeal and denied relief.  The court explained:

> "A defendant has a constitutionally guaranteed right to present
> a defense, which includes the right to call witnesses." <u>People v.</u>
> <u>Yost</u>, 278 Mich. App. 341, 379; 749 N.W.2d 753 (2008), citing
> U.S. Const., Am. VI, and Const. 1963, art. 1, § 20. However,
> "this right is not absolute: the accused must still comply with
> established rules of procedure and evidence designed to
> assure both fairness and reliability in the ascertainment of guilt
> and innocence." <u>Yost</u>, 278 Mich. App. at 379 (quotation marks
> and citations omitted).

Defendant relies on our Supreme Court's holding in <u>People v. Richardson</u>, 409 Mich. 126, 141; 293 N.W.2d 332, 338 (1980), mod <u>People v. Beach</u>, 429 Mich. 450 (1988), superseded by statute on other grounds as recognized in <u>People v. Smith–Anthony</u>, 494 Mich. 669, 699 (2013), to argue that the trial court's refusal to instruct the jury on his trial counsel's requested instructions foreclosed "the jury's option to convict the defendant in accordance with his own testimony, evidence, and theory." However, defendant's trial counsel was not precluded from arguing that the victim's death was accidental during trial. Review of the record reveals that defendant's trial counsel presented the theory of accident during his closing argument when he stated that "[w]hat happened was the gun went off accidentally and tragically hit [the victim], whose head was turned, in the back of the head. This is not acting in reckless disregard that your action would lead to death or great bodily harm of [the victim]." Therefore, the jury was not deprived of an opportunity to convict defendant with regard to defendant's testimony and the evidence during trial, nor was defendant's trial counsel prevented from presenting defendant's theories to the jury. Thus, defendant was not deprived of his constitutional right to present a defense. <u>See</u> <u>Hawthorne</u>, 474 Mich. at 184–185.

<u>Louris</u>, 2017 WL 4700026 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Even without the involuntary manslaughter and accident instructions, defense counsel was able to offer evidence and argument that the shooting was accidental and that the petitioner did not intend to kill anyone during the crime.  Additionally, the jury could have still found that the

shooting and death of McGee was accidental or unintentional based on the

testimony presented at trial and under the jury instructions given by the trial

court, particularly those setting forth the elements of the crimes and the

prosecution's burden of proof.  The petitioner fails to show that the jury

instructions, as given, rendered his trial fundamentally unfair or violated his

right to present a defense.  Habeas relief is not warranted on these claims.

### B.    Sufficiency of the Evidence

The petitioner next asserts that he is entitled to habeas relief

because the prosecutor failed to present sufficient evidence to support his

first-degree murder conviction – namely evidence of malice.  The

respondent contends that this claim lacks merit.

The federal Due Process Clause "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime [charged]."  In re Winship, 397 U.S. 358,

364 (1970).  The question on a sufficiency of the evidence claim is

"whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  Jackson v. Virginia,

443 U.S. 307, 319 (1979).  The Jackson standard must be applied "with

explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."  Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict ... defeats a petitioner's claim."  Id. at 788-89.

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder.  Mich. Comp. Laws § 750.316.  The elements of felony murder are:  (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in the statute.  See Matthews, 319 F.3d at 789 (citing People v. Carines, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)).  The facts and circumstances of the killing may give rise to an inference of malice, including evidence that the defendant used a deadly weapon.  Id.

The elements of the underlying felony of larceny from a person are: (1) the taking of someone else's property without consent, (2) movement of the property, (3) with the intent to steal or permanently deprive the owner of the property, and (4) the property was taken from the person or from the person's immediate area of control or immediate presence.  People v. Brantley, 296 Mich. App. 546, 551, 823 N.W.2d 290 (2012); Mich. Comp. Laws § 750.357.

As with any offense, the prosecution must prove beyond a

reasonable doubt that the defendant committed the charged offense.

People v. Oliphant, 399 Mich. 472, 489, 250 N.W.2d 443 (1976).  Direct or

circumstantial evidence and reasonable inferences arising from that

evidence may constitute satisfactory proof of the elements of an offense,

People v. Nowack, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); People

v. Jolly, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity

of the perpetrator, People v. Johnson, 146 Mich. App. 429, 434, 381

N.W.2d 740 (1985), and the defendant's intent or state of mind.  People v.

Dumas, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); see also Nowack, 462

Mich. at 402-03.

With these state law principles in mind and applying the Jackson

standard, the Michigan Court of Appeals denied relief on this claim.  The

court explained in relevant part:

> The evidence must be viewed "in the light most favorable to the
> prosecution in order to determine whether a rational trier of fact
> could have found that the prosecution proved the elements of
> the crime beyond a reasonable doubt." People v. Levigne, 297
> Mich. App. 278, 281–282; 823 N.W.2d 429 (2012), citing
> People v. Petrella, 424 Mich. 221, 268–269; 380 N.W.2d 11
> (1985). It is the role of the trier of fact to determine the weight
> of the evidence and evaluate the credibility of witnesses.

People v. Kanaan, 278 Mich. App. 594, 619; 751 N.W.2d 57 (2008), citing People v. Wolfe, 440 Mich. 508, 514–515; 489 N.W.2d 748 (1992), amended 441 Mich. 1201 (1992). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." People v. Williams, 268 Mich. App. 416, 419; 707 N.W.2d 624 (2005), citing Carines, 460 Mich. at 757. Minimal circumstantial evidence is sufficient to prove a defendant's state of mind. Kanaan, 278 Mich. App. at 594.

"The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." People v. Gayheart, 285 Mich. App. 202, 210; 776 N.W.2d 330 (2009), citing People v. Smith, 478 Mich. 292, 318–319; 733 N.W.2d 351 (2007), and Carines, 460 Mich. at 758–759. Defendant's charge of felony murder was based on the alleged uncharged predicate felony of larceny, which is specifically enumerated in MCL 750.316(1)(b).

On appeal, defendant argues that the prosecution failed to produce any evidence at trial that defendant intended to harm the victim, or that defendant had an intent to kill. Consequently, defendant argues, the prosecution failed to prove the requisite malice element by failing to prove that the shooting was intentional. As discussed, "'[m]alice' is defined as an act done 'with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result.'" Gillis, 474 Mich. at 138, quoting Mendoza, 468 Mich. at 536.

Viewing the evidence in the light most favorable to the prosecution, the evidence revealed that defendant stuck a gun in the ribs of Worrall and demanded that Worrall give defendant his money. When the victim saw this he told defendant to leave Worrall alone. Defendant then took his gun and hit Worrall over the head with such force that it split his head and caused him to lose consciousness. Depending on whose testimony was to be believed, defendant then shot the victim either almost simultaneous to the attempted robbery or about 15 seconds after striking Worrall with his gun. Whomever the jury chose to believe as to the passage of time between the blow to Worrall's head and the fatal discharge of the gun, there was legally sufficient evidence from which the jury could have found that defendant shot the victim because he interfered with his robbery of Worrall. If the jury believed the testimony of Manley, that there was at least a 15 second delay between striking Worrall and shooting the victim, the jury could reasonably conclude that defendant had the requisite time to have intentionally shot the victim. Bearing in mind that minimal circumstantial evidence is sufficient to prove a defendant's state of mind, defendant's conduct revealed by the witnesses who testified at trial, provided legally sufficient evidence from which a rational trier of fact could have inferred that defendant intentionally shot the victim. Kanaan, 278 Mich. App. at 594. Additionally, the jury could also have inferred defendant acted with malice because the act of using a loaded gun as a blunt weapon, and the act of committing an armed robbery both evince an intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the result. Goecke, 457 Mich. at 466. Accordingly, defendant is not entitled to relief on his claim that there was insufficient evidence to support his convictions.

Louris, 2017 WL 4700026 at *5-6.

The state court's decision is neither contrary to Supreme Court

precedent nor an unreasonable application of Supreme Court precedent or

the facts.  The prosecution presented sufficient evidence of malice through the testimony of witnesses which indicated that the petitioner struck Worrall with his gun and then intentionally shot and killed McGee while committing a larceny or that the petitioner struck Worrall with his gun causing it to fire and kill McGee while he was committing a larceny.  To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction. See Tucker v. Palmer, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Such testimony was sufficient to show that the petitioner killed McGee during the commission of a larceny and that he acted with malice by either intentionally shooting at him or by creating a  very high risk of death or great bodily injury with knowledge that death or bodily injury was the probable result by using a loaded gun to strike Worrall so as to support his first-degree felony murder conviction.

The petitioner challenges the jury's evaluation of the evidence at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even

if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The evidence presented at trial, viewed a light favorable to the prosecution, established the petitioner's guilt of first-degree felony murder (and the other offenses of conviction) beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### C.    Great Weight of the Evidence Claim

Lastly, the petitioner asserts that he is entitled to habeas relief because the verdict was against the great weight of the evidence.  The respondent contends that this claim is not cognizable and that it lacks merit.

The petitioner is not entitled to habeas relief on his claim that the jury verdict was against the great weight of the evidence.  It is well-established that habeas review is not available to correct errors of state law.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review.");

Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002).  State courts are the final arbiters of state law and federal courts will not intervene in such matters.  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987).

The federal Constitution requires only that the evidence be sufficient to sustain a conviction under the standard established in Jackson v. Virginia, 443 U.S. 307, 319 (1979).  When the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  A federal habeas court has no power to grant relief on the ground that a state conviction is against the great weight of the evidence.  See Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); see also Nash v. Eberlin, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007) ("a manifest-weight-of-the-evidence argument is a state-law argument"); Artis v. Collins, 14 F. App'x 387 (6th Cir. 2001) (declining to grant a certificate of appealability on claim that the verdict was against the manifest weight of the evidence).  Habeas relief is not warranted on this claim.

-33-

## V.    Conclusion

For the reasons stated, the Court concludes that the petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before the petitioner may appeal, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  The petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  <u>See</u> Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED**.

s/George Caram Steeh        

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2022

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 29, 2022, by electronic and/or ordinary mail and also on Kenneth Earl Louris #407394, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846.

s/Brianna Sauve
Deputy Clerk